## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | | |
|---|---|---|
| **Daniel Negrete,** *individually, and on behalf of all others similarly situated,* | * * * | Civil Action No. 4:25-cv-111 |
| Plaintiff, | * * | |
| v. | * * | **CLASS ACTION COMPLAINT** |
| **Live Calls Network, LLC,** 10319 Westlake Drive Suite 450 Bethesda, MD 20187 | * * * * | **JURY TRIAL DEMANDED** |
| Defendant. | * * | |

## CLASS ACTION COMPLAINT

Plaintiff, Daniel Negrete ("Plaintiff" or "Mr. Negrete"), and on behalf of all others similarly situated, by and through the undersigned attorneys, submits this Class Complaint against Defendant Live Calls Network, LLC ("Live Calls"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this class action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies under the Telephone Consumer Protection Act ("TCPA") resulting from the unlawful actions of the Defendant.

2.    In violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations, 47 C.F.R. § 64.1200 *et seq.*, multiple telemarketing communications, soliciting goods or services, were initiated by the Defendant or on their behalf, to Plaintiff and the putative class members' residential telephone numbers

3.    Specifically, Defendant [or an entity on Defendant's behalf] initiated over thirty (30) calls since 2023, which included calls made to a telephone number on the National Do-Not-

Call Registry, repeated calls after a clear request to stop calling, and utilized pre-recorded messages or artificial voice calls.

## BACKGROUND ON THE TCPA

4.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

5.      A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

7.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

2

9.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

10.    In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls.  Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

11.    The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

12.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which establishes original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

13.     The Defendant knowingly and purposefully called Plaintiff on his "515" area code phone number, which is associated with the State of Iowa.

14.     Plaintiff received those unwanted calls while in or near Des Moines, Iowa.

15.     Accordingly, Defendant availed itself to this State.

16.     A substantial portion of the acts and omissions underlying this action occurred within this District.

17.     Accordingly, specific personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

18.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.


## PARTIES

19.     Plaintiff, Daniel Negrete is currently a citizen and resident of Des Moines, Iowa 50317.

20.     Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

21.     Defendant Live Calls is a business entity with a headquarters or principal address located at 10319 Westlake Dr, Bethesda, Maryland 20817.

22.     The nature of the Defendant's business involves telemarketing, lead generation, and advertising services.

23.     Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

24.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

25.    Plaintiff alleges receiving unlawful telemarketing solicitations by phone from the Defendant Live Calls.

26.    The nature of the Defendant's business involves telemarketing and lead generation. According to Defendant's website[1], Live Calls specializes "in search, social, and email marketing campaigns and also provide radio and television pay per call campaigns."

27.    Live Calls purports to have customer consent for all of their calls or leads. "Online Lead Generation is the process of collecting data of sales prospects who have shown an interest in a particular product or service. Responders submit their personal information and give their express consent to be contacted by select businesses."[2]

28.    At all times relevant hereto, Mr. Negrete is and was the customary user of a residential cellular telephone, the number for which was (515) XXX-8848 (the "8848 Number").

29.    Area code 515 is a telephone area code in the North American Numbering Plan corresponding to the north-central portion of Iowa.

30.    Plaintiff registered the 8848 Number on the National Do Not Call Registry ("NDNCR") in December of 2003.

31.    Plaintiff registered that subject cell phone number on the NDNCR to gain the protections of the NDNCR, including the benefit and attainment of solitude from invasive, unwanted, annoying, and irritating telemarketing calls.

32.    Plaintiff's subject cell phone number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential

---

[1] https://www.livecallsnetwork.com/ (last accessed March 18, 2025).

[2] https://www.livecallsnetwork.com/online-lead-generation/ (last accessed March 18, 2025).

purposes, including personal communication between family and friends, and other common domestic consumer uses.

33.     As described in greater detail below, Plaintiff received multiple calls from various phone numbers. The nature of these calls were telemarketing communications, soliciting legal services for vehicle accidents or for other personal injury matters.

34.     These communications were not made for "emergency purposes," but rather for solicitation purposes.

35.     The Plaintiff knew these telemarketing communications were for solicitation purposes because the message indicated, *inter alia*, that the calling party "would be more than willing to assist [Mr. Negrete] in obtaining the compensation [he] deserve[d]."

36.     Between November of 2023 and the present, Defendant engaged in a telemarketing campaign directed toward Plaintiff in furtherance of its efforts to benefit from the solicitation of legal services, which services were unwanted and unneeded by Plaintiff.

37.     During that time, Plaintiff was not seeking legal services for vehicle accidents or for other personal injury matters.

38.     Plaintiff did not provide express written consent or any consent for those solicitations.

39.     Plaintiff did not have any established business relationship with the Defendant prior to the telemarketing campaign.

40.     Each and every call proceeded in substantially the same manner. First, the Plaintiff would receive a phone call which began as a pre-recorded robocall, to which the Plaintiff would feign interest and respond to the prompts given. Then, after staying on the line for some time, the call would be transferred to a live agent. The live agent would announce they were calling from

"Accidental Claims Help Line" (or a similarly named entity) and proceed with a line of inquiry which began by asking whether the Plaintiff was recently involved in a car accident.

41.    Plaintiff believes each of these live agents he spoke with all work for the same company.

42.    Plaintiff provides the following, more specific description of three such phone calls.

43.    Plaintiff received an unsolicited telemarketing call on August 28, 2024 at 11:45 a.m. from the number 515-532-2393. The call begins with a pre-recorded message from "Dave" with "Accidental Claim Support" and asked Mr. Negrete if he'd had an auto accident in the last two years. After responding "yes", the artificial voice replies that "we have a team of experienced attorneys specialized in handling such cases, and they would be more than willing to assist you in obtaining the compensation you deserve. Please stay on the line, and I'll connect you right away." The call is then transferred to a live agent from "Accidental Claims Help Line", who attempts to confirm the details given to the artificial voice. Mr. Negrete interrupts the line of questioning and asks the calling party "are you calling on behalf of Live Calls Network?" to which the calling party responds "yes." "Are you able to connect me with Live Calls Network. "No. No, I don't have authority. I can't." Mr. Negrete then asks the live agent if he has any call back number or email address for Live Calls, to which he again responds "I can't. I'm not an authorized person." Finally, Mr. Negrete asks if they can put him on their [internal] do not call list, and the live agent responds "yeah, I can do that."

44.    Plaintiff received an unsolicited telemarketing call on August 8, 2024 at 9:49 a.m. from the number 515-277-5599. The call begins with a pre-recorded message "This is Jim from Accidental Claim Support. How's your day going?" asked Mr. Negrete if he'd had an auto accident in the last two years. After responding "yes", the artificial voice replies that "we have a team of

experienced attorneys who specialize in handling such cases, and they would be more than willing to assist you in obtaining the compensation you deserve. Please stay on the line, and I'll connect you with them right away." The call was then transferred to a live agent "Sam Anderson, a verification officer from Accident Claim Help Line", who attempted to confirm the details given to the artificial voice. Mr. Negrete interrupted the line of questioning and asked the calling party "are you with Live Calls Network?" to which the calling party responded "who told you that?" and then abruptly ended the call.

45.     It was evident to Plaintiff that "Dave" and "Jim" were not live agents, but rather an avatar/soundboard technology which uses computerized or pre-recorded clips programmed to respond to human prompts. Plaintiff could ascertain this because, inter alia, (a) the content of the message was generic, (b) the tone, cadence, and inflection of the voice was artificial and computerized, and (c) the voice was, at times, non-interactive with Plaintiff.

46.     Plaintiff received an unsolicited telemarketing call on November 14, 2024 at 1:11pm CST from the number 515-203-4216. As with each call Mr. Negrete received, the call begins with a pre-recorded message and asks Mr. Negrete if he's had an auto accident in the last two years. Eventually, the call is then transferred to a live agent who attempts to confirm the details given to the artificial voice. On this occasion, Mr. Negrete does not interrupt and completes the line of questioning. The call is then transferred to a "supervisor" "Ryan" who again attempts to confirm the same details. This time, Mr. Negrete asks the live agent "are you with Live Calls Network?" to which the calling party immediately ends the call.

47.     In many calls, the Plaintiff indicated that he was not interested in the legal services being solicited and asked them to stop calling him and to place him on an internal do not call list. Yet the calls continued.

48.     Plaintiff received more than 35 communications initiated by or on behalf of the

Defendant.  Those calls were made to Plaintiff on instances, including but not limited to:

| Date | Time | Calling Number | Duration | Caller ID | Prerecorded? |
|---|---|---|---|---|---|
| 11/9/2023 | 4:18 pm CST | 515-432-4095 | 0:54 | Boone, IA | Y |
| 11/13/2023 | 3:07 pm CST | 814-481-3320 | 0:33 | Luthersburg, PA | Y |
| 11/17/2023 | 3:31 pm CST | 515-967-8029 | 0:31 | Des Moines, IA | Y |
| 11/20/2023 | 2:47 pm CST | 515-232-6171 | 1:00 | Ames, IA | Y |
| 11/23/2023 | 5:45 pm CST | 515-996-2250 | 7:00 | Can Meter, IA | Y |
| 11/24/2023 | 1:46 pm CST | 515-630-1637 | 0:50 | Des Moines, IA | Y |
| 11/30/2023 | 5:38 pm CST | 515-432-4897 | 0:46 | Boone, IA | Y |
| 12/4/2023 | 3:58 pm CST | 515-285-4890 | 0:55 | Des Moines, IA | Y |
| 12/14/2023 | 4:07 pm CST | 515-266-6975 | 1:00 | Des Moines, IA | Y |
| 1/23/2024 | 11:29 am CST | 515-993-5120 | 1:00 | Adel, IA | Y |
| 3/11/2024 | 4:43 pm CST | 712-481-5077 | 1:00 | SPAM RISK | Y |
| 3/12/2024 | 12:45 pm CST | 515-342-6109 | 1:00 | Des Moines, IA | Y |
| 3/20/2024 | 2:53 pm CST | 401-210-3024 | 8:00 | Block Island, RI | Y |
| 5/22/2024 | 3:39 pm CST | 838-677-7551 | 0:56 | Colonie, NY | Y |
| 8/8/2024 | 10:26 am CST | 515-222-9109 | 3:00 | Des Moines, IA | Y |
| 8/8/2024 | 9:49 am CST | 515-277-5599 | 1:00 | Des Moines, IA | Y |
| 8/8/2024 | 10:51 am CST | 515-528-8613 | 2:00 | Des Moines, IA | Y |
| 8/9/2024 | 12:59 pm CST | 515-243-8976 | 5:00 | SPAM RISK | Y |
| 8/9/2024 | 2:54 pm CST | 515-257-1201 | 3:00 | SPAM RISK | Y |
| 8/9/2024 | 4:05 pm CST | 515-295-9082 | 2:00 | SPAM RISK | Y |

| 8/9/2024 | 4:30 pm CST | 515-518-2804 | 2:00 | Des Moines, IA | Y |
|---|---|---|---|---|---|
| 8/9/2024 | 10:52 am CST | 515-962-3318 | 1:00 | Des Moines, IA | Y |
| 8/9/2024 | 4:13 pm CST | 515-986-3813 | 2:00 | Des Moines, IA | Y |
| 8/9/2024 | 5:22 pm CST | 515-999-2482 | 1:00 | Granger, IA | Y |
| 8/12/2024 | 3:22 am CST | 515-989-4142 | 3:00 | SPAM RISK | Y |
| 8/21/2024 | 4:54 pm CST | 515-963-1031 | 1:00 | SPAM RISK | Y |
| 8/23/2024 | 6:32 pm CST | 515-442-9819 | 1:00 | Indianola, IA | Y |
| 8/27/2024 | 5:39 pm CST | 515-528-2722 | 0:45 | Des Moines, IA | Y |
| 8/28/2024 | 10:33 am CST | 515-289-1021 | 1:00 | SPAM RISK | Y |
| 8/28/2024 | 11:45 am CST | 515-532-2393 | 2:00 | SPAM RISK | Y |
| 10/24/2024 | 1:16 pm CST | 515-986-4224 | 1:00 | Des Moines, IA | Y |
| 11/14/2024 | 1:11 pm CST | 515-203-4216 | 1:00 | SPAM RISK | Y |
| 11/25/2024 | 5:38 pm CST | 52-322-696-5855 | 0:11 | Mexico | Y |
| 12/6/2024 | 3:09 pm CST | 515-967-7112 | 1:00 | Des Moines, IA | Y |
| 12/9/2024 | 11:23 am CST | 515-992-3548 | 2:00 | Dallas Center, IA | Y |
| 12/11/2024 | 3:44 pm CST | 515-824-3471 | 1:00 | Renwick, IA | Y |
| 02/18/2025 | 11:37 am CST | 515-962-1571 | 1:00 | Indianola, IA | Y |
| 02/19/2025 | 8:22 am CST | 515-345-6765 | 0:55 | - | Y |

49.    Upon information and belief, there were more calls than those listed above.

50.    Plaintiff understands Defendant was responsible for each of those calls listed above, because each call was substantially similar to the calls where the agent explicitly or implicitly admitted to an affiliation with Live Calls Network. Specifically, the calls featured "spoofed" phone

numbers, utilized the same pre-recorded voice and script referencing "Accident Claim Help Line" and solicited legal services for personal injury matters including automobile accidents.

51.     As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendant.

## Direct and Vicarious Liability

52.     Without having had the benefit of discovery to show otherwise, Plaintiff understands and therefore alleges Defendant is directly liable for the unsolicited communications at issue because they were placed or made directly by the Defendant.

53.     Alternatively, if some or all of the communications were made by third-party(ies) on behalf of the Defendant, then the Defendant is vicariously liable for those communications.

54.     Plainly, the TCPA statute expressly permits liability for violative calls made "by or on behalf of the same entity". 47 USC § 227(c)(5).

55.     On May 9, 2013, the FCC determined that contracting with third-parties to perform the telemarketing activities was not a basis for avoiding liability, as written within a Declaratory Ruling which held that "sellers" may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

56.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, and rejected the assertion that a seller's liability requires a finding of formal actual agency or immediate direction and control over third parties who place a telemarketing call. *Id*., at 6587 n. 107.

57.    The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

58.    Plaintiff sensibly assumed the telemarketing communications received were from or on behalf of the Defendant because on multiple occasions, Mr. Negrete specifically asked whether the calling party was hired by or otherwise affiliated with Live Calls Network, to which the live agent responded affirmatively.

59.    Defendant may have hired, encouraged, permitted, or enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to the Defendant.

60.    Defendant's third-party telemarketers had actual and/or apparent authority to act on their behalf.

61.    Defendant ratified the violations of the TCPA by its agents by accepting leads and deriving profit from sales imitated by unlawful robocalls.

62.    Defendant acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

63.    Defendant is not permitted under the law to outsource or contract its way out of liability by directing and benefitting from its agents' TCPA violations.

12

64.    For the counts identified below, to the extent the Defendant initiated one or more unlawful communications directly, then the Defendant is directly liable for each violative call.

65.    Alternatively, for the counts identified below, to the extent any call was made by a third-party agent or entity acting on the Defendant's behalf, then the Defendant is vicariously liable, for encouraging or benefitting from the violative conduct of such an agent or entity.

## CLASS ALLEGATIONS

66.    Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

67.    Plaintiff seeks to represent the following classes:

**Pre-Recorded Voice Class:** All persons in the United States where: (1) the person received a telephone call using prerecorded or artificial voice from Defendant or someone acting on behalf of Defendant; (2) which was not made with the person's prior express written consent, from four years prior to the date of the filing of the original lawsuit to the date of class certification.

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of the Defendant, from four years prior to the date of this complaint through the date the Court certifies the class, during which time the Defendant had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

**Do-Not-Call Registry Class:** All persons in the United States where: (1) the person's telephone number was registered on the National Do-Not-Call Registry for 31 or more days; (2) the person's number was registered to an individual rather than a business; (3) the person received two or more calls were on behalf of Defendant within twelve months; and (4) those calls were for the purpose of soliciting Defendant's products and/or services, from four years prior to the filing of this Complaint through the date a class is certified.

68.    Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

69.    The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

70.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

71.    Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

72.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

73.    Class Members are so numerous and the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

74.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

    a.    Whether the messages played at the outset of calls constitute "pre-recorded messages" under 47 U.S.C. §§ 227(b)(1);

    b.    Whether Defendant's conduct violates 47 U.S.C. § 227(b), and the corresponding rules and regulations implementing the TCPA;

    c.    Whether the Defendant's call campaign consisted of "solicitations" as defined by 47 U.S.C. § 227(a)(4) for the purpose of 47 U.S.C. §

227(c);

    d.   Whether Defendant's conduct violates 47 U.S.C. § 227(c), and the corresponding rules and regulations implementing the TCPA;

    e.   Whether Defendant's maintains proper methods and practices for obtaining any express written consent; and

    f.   Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

75.    Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing prerecorded voice calls to the Plaintiff and the putative class members.

76.    Plaintiff will fairly and adequately protect the interests of the class members and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

77.    The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability

issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

78.     The Defendant placed calls to this District with a "515" area code.  This District is therefore an appropriate forum in which to adjudicate this dispute.

79.     Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, modify definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23.  Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
## DEFENDANT VIOLATED 47 U.S.C. § 227(b)(1)

80.     Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

81.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

82.     Defendant placed multiple telephone calls to Plaintiff's cellular telephone number that used a pre-recorded voice.

83.     Defendant's calls were not made for emergency purposes.

84.     Defendant's calls were made without any prior express consent.

85.     Accordingly, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(b)(1).

86.     Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages for each call using pre-recorded voice placed by Defendant.

87.     Plaintiff and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call with pre-recorded voice made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(1).

## COUNT II
### DEFENDANT VIOLATED 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)
### Violation of the National Do-Not-Call Rules

88.     Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

89.     Defendant made, or had made on its behalf, telephone calls constituting telephone solicitations to Plaintiff and the putative class members.

90.     Plaintiff and the putative class members' telephone numbers were registered on the NDNCR at the time of the calls.

91.     Plaintiff and the putative class members each received two or more such calls in a 12-month period.

92.     Accordingly, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(5) and the TCPA's corresponding regulations.

93.     Defendant knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

94.     Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages for each call placed by Defendant.

95.     Plaintiff and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III
## <u>DEFENDANT VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(d)</u>
### <u>Violation of Internal Do-Not-Call Rules</u>

96.    Plaintiff incorporates by reference the foregoing as if fully set forth herein.

97.    Plaintiff brings this Count individually and on behalf of all others similarly situated.

98.    Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

99.    Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

100.    No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)    Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, upon demand, for maintaining a do-not-call list.

(2)    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)    Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber s name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4)    Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be

contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

101.    Defendant and/or its agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendant, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendant, it made two or more calls to Plaintiff, in order to make further solicitations, as described above. Defendant continues to make telemarketing calls while they fail to honor consumer requests not to receive calls from or on behalf of Defendant.

102.    Defendant and/or its agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Defendant continues to make telemarketing calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

103.    On information and belief, and in addition or in the alternative, Defendant and/or its agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above.

104.    Defendants and/or its agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendant could be contacted. Specifically, Defendant spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their

telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendant's solicitations.

105.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

106.    Defendant violated Plaintiffs rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

107.    Defendant's violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

108.    The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

109.    Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendant and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

110.    Plaintiff, on behalf of himself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant to stop its violations of the TCPA.

## **Prayer for Judgment**

WHEREFORE, Plaintiff, Daniel Negrete, individually, and or behalf of all others similarly situated, requests the Court grant the following relief:

a.  Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action

and appointing Plaintiff as the class representative and appointing his counsel as Class Counsel;

b. An award of statutory damages;

c. An award of treble damages;

d. An award of reasonable attorneys' and costs;

e. Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling/texting numbers registered on the National Do Not Call Registry;

f. Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and,

g. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.


## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, Daniel Negrete, demands a jury trial in this case.


Dated: March 27, 2025

Respectfully Submitted,

*/s/ Philip A. Burian*
Philip A. Burian, Esq. AT0001284
Simmons Perrine Moyer Bergman PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Phone: 319-366-7641
Email: pburian@spmblaw.com

Jacob U. Ginsburg, Esq. (*phv* anticipated)
Kimmel & Silverman, P.C.
30 E. Butler Ave.
Ambler, PA 19002
Direct: (267) 468-5374
Fax: (877) 788-2864
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Christopher E. Roberts (*phv* anticipated)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
email: croberts@butschroberts.com
*Attorneys for Plaintiff*